# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LINDA J. SUICA, | Case No. 2:20-cv-00853-BNW |
| Plaintiff, | |
| v. | **ORDER** |
| ANDREW SAUL, | |
| Defendant. | |

This case involves review of an administrative action by the Commissioner of Social Security denying Plaintiff Linda J. Suica's application for disability insurance benefits under Title II of the Social Security Act. The Court reviewed Plaintiff's motion to remand (ECF No. 20), filed January 21, 2021, the Commissioner's countermotion to affirm and cross-motion for summary judgment (ECF Nos. 21, 22), filed February 2, 2021, and Plaintiff's reply (ECF No. 23), filed February 23, 2021.

The parties consented to the case being heard by a magistrate judge in accordance with 28 U.S.C. § 636(c) on May 12, 2020. ECF No. 2. This matter was then assigned to the undersigned magistrate judge for an order under 28 U.S.C. § 636(c). *Id.*

I.     BACKGROUND

    1.     **Procedural History**

On September 18, 2016, Plaintiff applied for disability insurance benefits under Title II of the Act, alleging an onset date of April 18, 2016. ECF No. 16-2[1] at 120–23. Her claim was denied initially and on reconsideration. *Id*. at 49–52; 56–60. A hearing was held before an Administrative Law Judge ("ALJ") on May 15, 2019. ECF No. 16-1 at 91–109. On June 5, 2019, the ALJ issued a decision finding that Plaintiff was not disabled. *Id*. at 43–52. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on March 24, 2020. *Id*. at 7–13. Plaintiff, on May 12, 2020, timely commenced this action for judicial review under 42 U.S.C. § 405(g). (*See* Compl. (ECF No. 1)).

II.    DISCUSSION

    1.     **Standard of Review**

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006);

---

[1] ECF No. 16 refers to the Certified Administrative Record in this matter that, due to COVID-19, was electronically filed. (Notice of Electronic Filing (ECF No. 16)). All citations to the Administrative Record will use the CM-ECF page numbers. Notably, several pages of the Administrative Record include documents that belong to someone who is not Plaintiff. *See* ECF No. 16-2 at 250-52, 254. The parties did not raise this inadvertent inclusion as a concern, and the Court finds this clerical error to be harmless.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

**2. Disability Evaluation Process**

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous

period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)–(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[2] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

---

[2] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are "entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Bray*, 554 F.3d at 1224 (citations omitted) (finding that the ALJ erred in disregarding SSR 82-41).

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

But before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed a SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. ECF No. 16-1 at 48–52.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 18, 2016. *Id*. at 48.

At step two, the ALJ found that Plaintiff had the medically determinable "severe" impairment of multiple sclerosis. *Id*. The ALJ found her suprasellar mass to be "non-severe." *Id*. Additionally, the ALJ found that Plaintiff's depression was a not medically determinable impairment. *Id*. at 49.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.

Before moving to step four, the ALJ also found that Plaintiff had the RFC to perform "less than the full range of light exertion": She can sit for 6 hours in an 8-hour day; she can stand or walk for 2 hours; she has unlimited ability to push or pull; she can lift or carry 20 pounds occasionally and 10 pounds frequently; she can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; she can never climb ladders, ropes, or scaffolds; and she must avoid even moderate exposure to extreme heat and hazards. *Id*.

At step four, the ALJ found that Plaintiff can perform past relevant work as an accountant. *Id*. at 51. Accordingly, the ALJ ended the five-step sequential evaluation process and concluded that Plaintiff was not under a disability at any time from April 18, 2016 through June 5, 2019, the date of the ALJ's decision. *Id*. at 52.

### 3. Analysis
#### a. Whether the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's pain and symptom testimony
##### i. The ALJ's decision

The ALJ summarized Plaintiff's pain and symptom testimony as follows: "The claimant reported she could not work because she was constantly fatigued and had no stamina. She had difficulty learning new tasks. Her concentration was affected. She had difficulty climbing stairs. She also reported depression, headaches, pain, and numbness in her hands and feet, visual disturbance, and memory difficulty." ECF No. 16-1 at 50 (citing Exhibit 6F and Plaintiff's testimony at ALJ hearing).

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with medical and other evidence, as explained in this decision." ECF No. 16-1 at 50. Although it is difficult to identify the ALJ's reasons for discounting Plaintiff's pain and symptom testimony, it seems that the ALJ specifically found that (1) "medical findings do not show disabling limitations[,]" (2) Plaintiff's multiple sclerosis is "well-controlled on medication[,]" and (3) the objective medical evidence is inconsistent with Plaintiff's pain and symptom testimony. The ALJ also wrote that Plaintiff's brain MRI findings and her activities of daily living support her RFC, though the parties dispute whether the ALJ relied on these two additional reasons to discount Plaintiff's pain and symptom testimony.

##### ii. The parties' arguments

Plaintiff moves to remand this matter, arguing that the ALJ erred by failing to articulate "clear and convincing" reasons supported by substantial evidence for rejecting her pain and symptom testimony. ECF No. 20 at 7, 12. Plaintiff explains that the "demanding" standard of "clear and convincing" reasons is applicable because the ALJ made no finding regarding whether Plaintiff "engaged in malingering and this record does not demonstrate evidence of malingering." *Id*. at 8.

Plaintiff argues that the ALJ provided four reasons, which are not "clear and convincing," for discounting her pain and symptom testimony. *Id*. at 8–12. First, Plaintiff argues that the ALJ

improperly rejected her testimony because her "multiple sclerosis is purportedly 'well-controlled' on medication." *Id*. at 8–10. She argues that an ALJ may properly reject testimony on grounds that medication effectively controls the impairment but to do so requires the ALJ to "consider the context of the [medical] providers' statements" as well as whether the impairment (like multiple sclerosis) "involve[s] acute attacks, known as exacerbations, or partial or full remissions." *Id*. at 9. According to Plaintiff, because the ALJ allegedly did not consider this context, he erred by "improperly rel[ying] on a period of relative improvement." *Id*. Plaintiff further argues that although she has received "helpful" treatment, she continues to suffer from ailments such as fatigue, numbness, and pain. *Id*. Plaintiff also notes that although she has experienced "relative improvement[,]" this improvement "occurred during a period where she is unemployed, and able to limit stressors and physical activities with the help of her husband, who does the majority of the cooking, cleaning, and shopping." *Id*. at 10.

Second, Plaintiff argues that the ALJ erred by relying on a non-examining state agency physician's opinion to reject her testimony. As Plaintiff argues, the ALJ's "reliance on [this doctor's] opinion as a reason for rejecting [her] testimony is problematic" because the doctor only "had a limited review of the record" and never examined Plaintiff. *Id*. at 11.

Third, Plaintiff argues that the ALJ erred by relying on a brain MRI to reject her testimony but not providing "a nexus between the MRI and any inconsistency with [Plaintiff]'s symptom testimony." *Id*.

Finally, Plaintiff argues that the ALJ erred by not explaining "which activities [of daily living] are inconsistent with her symptom testimony." *Id*. at 12.

The Commissioner argues that the ALJ provided three—not four—reasons for discounting Plaintiff's pain and symptom testimony, and Plaintiff only challenged two of these reasons: (1) the medical record showed that Plaintiff's multiple sclerosis was "well-controlled on medication[,]" and (2) the non-examining state agency doctor's opinion "contradicted the extent of [Plaintiff's] allegations[.]" ECF No. 22 at 8. The Commissioner argues that Plaintiff waived her ability to challenge the ALJ's "finding that objective medical evidence did not support the

extent of her allegations." *Id*. The Commissioner also notes that the ALJ did not rely on either the brain MRI or Plaintiff's activities of daily living to discount her pain and symptom testimony. *Id*.

In her reply, Plaintiff argues again that the ALJ erred by not "articulat[ing] clear and convincing reasons supported by substantial evidence for rejecting" Plaintiff's pain and symptom testimony. ECF No. 23 at 3. She explains that she continued to suffer from symptoms like fatigue, which cannot be objectively measured, during her period of relative medical improvement. *Id.* at 4–5. She also notes that this period of medical improvement occurred when she had limited stress because she did not work and relied on her husband to complete various chores. *Id*. at 4. Plaintiff also argues that the ALJ impliedly relied on the brain MRI findings and activities of daily living to reach his adverse credibility determination. *Id*. at 3–4. Finally, Plaintiff notes that the ALJ cannot "solely rely on objective evidence to reject an opinion." *Id*. at 4.

### iii. Whether the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's pain and symptom testimony

An ALJ engages in a two-step analysis to determine whether a plaintiff's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted). "The claimant is not required to show that her impairment 'could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citations omitted).

Second, "[i]f the [plaintiff] meets the first test and there is no evidence of malingering, the ALJ can only reject the [plaintiff's] testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's] complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with

findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the plaintiff's] testimony.")). Furthermore, "[w]hile an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006).

The Ninth Circuit recognizes the clear and convincing evidence standard as "the most demanding required in Social Security cases" and "not an easy requirement to meet." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Trevizo v. Berryhill,* 871 F.3d 664, 678 (9th Cir. 2017). An ALJ's failure to provide "specific, clear, and convincing reasons" for rejecting a plaintiff's pain and symptom testimony constitutes legal error that is not harmless because it precludes a court from conducting a meaningful review of the ALJ's reasoning and ensuring that the plaintiff's testimony is not rejected arbitrarily. *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

In making an adverse credibility determination, the ALJ may consider, among other, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958–59.

Here, because there is no dispute that Plaintiff's multiple sclerosis, as of the alleged onset date, could have caused the symptoms about which she testified at the ALJ hearing, the ALJ had to make a credibility determination as to her testimony. *Molina*, 674 F.3d at 1112. And because the ALJ made no finding that Plaintiff was malingering, he had to provide "specific, clear, and convincing" reasons to support his adverse credibility finding. *Ghanim*, 763 F.3d at 1163. As discussed below, the Court holds that the ALJ provided specific, clear, and convincing reasons, supported by substantial evidence, to discount Plaintiff's subjective symptom testimony. *See id.*

### a. Plaintiff's multiple sclerosis is "well-controlled on medication"

The ALJ discounted Plaintiff's pain and symptom testimony because a "[r]eview of the record shows that the claimant's MS is well-controlled on medication." ECF No. 16-1 at 50.

The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

On this record and as discussed below, the ALJ reasonably concluded that Plaintiff's impairments, when treated, were not as limiting as she claimed. This ALJ determination is supported by substantial evidence and provides a specific, clear, and convincing reason to discount Plaintiff's pain and symptom testimony.

In support of his adverse credibility determination, the ALJ cited treatment notes from Plaintiff's treating neurologists Dr. Luiz Diaz, M.D. and Dr. Adam Mamelak, M.D., which noted that Plaintiff was not experiencing any side effects from Ocrevus, her MS medication, and her MS "was 'very well controlled with medical therapy[,]'" respectively. ECF No. 16-1 at 50. Initially, these treatment notes do not appear to contradict Plaintiff's reported symptoms of fatigue, tiredness, numbness in her hands and feet, and pain. In fact, the ALJ's own discussion of Dr. Diaz's treatment notes indicated that she suffered from "some fatigue, numbness in the left leg and some pain in the right biceps and shoulder girdle area[,]" her "[v]ibration was decreased distally with sensory ataxia[,]" and she "had a slight dystaxia on the heel-to-shin testing, but no evidence of truncal ataxia." *Id.* at 50–51. Additionally, Dr. Mamelak's September 20, 2017 treatment notes cited by the ALJ to demonstrate that Plaintiff's MS "was 'very well controlled with medical therapy" also indicated that Plaintiff "report[ed] some areas of stiffness and numbness but is ambulatory." ECF No. 16-4 at 139. Further, treatment notes dated March 7, 2017

from Nevada Health and Wellness, which the ALJ did not cite, provided that Plaintiff suffered from "dizziness[,] pain in muscles or joints[, and] paresthesias or numbness [in the] hands and feet off and on . . . due to MS." *Id.* at 105.

But treatment notes, as Plaintiff herself acknowledges, "must be viewed in light of the overall diagnostic record." *Ghanim*, 763 F.3d at 1164 (citing *Holohan v. Massanari,* 246 F.3d 1195, 1205, 1208 (9th Cir. 2001); *Ryan v. Commissioner of Social Security,* 528 F.3d 1194, 1200–01 (9th Cir. 2008)). Here, the medical findings provide that Plaintiff's MS improved both before and after she started Ocrevus injections in mid-to-late 2017, including when Plaintiff was still working in 2015 and early 2016. Dr. Diaz's treatments notes, beginning in March 2015 through April 3, 2018, consistently (with one exception[3]) provide that Plaintiff's MS was "clinically stable," "stable," or "doing well." *See, e.g.,* ECF No. 16-4 at 120 (March 2015 note provided "History of multiple sclerosis, clinically stable"), *id.* at 116 (April 2016 note provided "History of multiple sclerosis, stable, without signs of deterioration), *id.* at 115 (August 2016 note provided "History of multiple sclerosis, doing well"), *id.* at 111 (January 2017 note provided "Prior history of multiple sclerosis, stable"), *id.* at 205 (March 2018 note provided "History of relapsing/remitting multiple sclerosis, stable"), *id.* at 202 (April 2019 note provided "History of multiple sclerosis, doing well on four cycle of Ocrevus with no side effects").

At the same time, Dr. Mamelak's treatment notes also support Plaintiff's improved condition. *See id.* at 139 (September 2017 note provided that Plaintiff's "longstanding history of multiple sclerosis . . . has been very well controlled with medical therapy"); *id.* at 154 (September 2018 note provided that Plaintiff's MS is "in remission and stable"). Records from a several-day hospitalization for dehydration and gastrointestinal complications in 2015—a period in which Plaintiff was working—further provided that Plaintiff's MS was stable. *See* ECF 16-3 at 67

---

[3] Dr. Diaz's treatment note dated April 10, 2017 indicated that Plaintiff "shows progression of the disease [MS] with a left lower extremity dysmetria and dystaxia, as well as loss of vibration sensation. This is something that needs to be evaluated further since the patient clinically had none of these problems in the left leg and now she does. Most likely this is evidence of progression of the disease." ECF No. 16-4 at 108. But in the doctor's next treatment note dated September 5, 2017, he opined that Plaintiff "is actually improving" and "stable[.]" *Id.* at 206.

("multiple sclerosis-currently stable"), *id*. at 104 ("multiple sclerosis-currently stable, Neuro recs are to stop meds for now").

In short, the ALJ relied on medical records from Plaintiff's treating physicians that spanned several years, including when she was still working, to find that her MS improved and stabilized with medication. The ALJ then reasonably concluded that this medical improvement was inconsistent with Plaintiff's pain and symptom testimony. Accordingly, the ALJ provided a specific, clear, and convincing reason, supported by substantial evidence, for making an adverse credibility determination. *See Valentine*, 574 F.3d at 693 ("conclud[ing] that the ALJ's resolution between conflicting evidence provided a clear and convincing reason to reject [Plaintiff's] subjective testimony").

### b. Medical opinion evidence is inconsistent with Plaintiff's pain and symptom testimony

The ALJ also found that Plaintiff's pain and symptom testimony was not entirely credible because it was inconsistent with medical opinion evidence. The ALJ assigned "little" weight to treating physician Dr. Diaz and "greater" weight to non-examining state doctor Jon Arnow, M.D.[4] ECF No. 16-1 at 51. Whereas Plaintiff "does not raise the issue of whether the ALJ properly rejected Dr. Diaz's opinions[,]" she does argue that the ALJ erred by assigning greater weight to Dr. Arnow's opinion given that the latter only reviewed records through April 2017 and never examined Plaintiff. ECF No. 20 at 11 n.1.

In weighing a plaintiff's credibility, the Commissioner may consider different factors, including physician and third-party testimony about the nature, severity, and effect of symptoms. *Thomas*, 278 F.3d at 958–59. Here, Dr. Arnow, relying on Plaintiff's medical records through April 2017, opined that she "had capacity for less than the full range of light exertion." ECF No. 16-1 at 51. Plaintiff argues that the ALJ could not rely on Dr. Arnow's medical opinion to discount her pain and symptom testimony because he had a "limited review of the record" and, therefore, "did not have a full picture of [Plaintiff's] multiple sclerosis, the symptoms of which varied over time . . . ." ECF No. 20 at 11. But the Court disagrees. This is because, as noted

---

[4] The ALJ did not identify what weight he assigned to treating physician Dr. Mamelak, though neither party raises this as an issue.

above, the treating physicians' treatment notes before and after April 2017 (with one exception from April 2017) continued to indicate that Plaintiff's MS condition was stable. At the same time, Plaintiff does not indicate what would or should have happened had Dr. Arnow reviewed records through 2019, as she concedes that the ALJ properly rejected Dr. Diaz's opinion[5] asserting that Plaintiff cannot perform the more restrictive full-time, sedentary work.

Additionally, Plaintiff's claim that the ALJ could not discount Plaintiff's pain and symptom testimony because Dr. Arnow never examined her lacks support, as an ALJ may rely on a non-examining doctor's opinion if his opinion is "consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957 (citations omitted).

In short, the ALJ reasonably concluded, based on this record, that the medical opinion evidence, including Dr. Arnow's opinion, did not support Plaintiff's pain and symptom testimony. The ALJ's finding was a specific, clear, and convincing reason, supported by substantial evidence, to discount Plaintiff's testimony.

### c. Objective medical evidence is inconsistent with Plaintiff's pain and symptom testimony

Third, in support for his conclusion that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with medical and other evidence, as explained in this decision[,]" the ALJ cited to objective medical evidence, noting that it "showed minimal pathologic findings, and normal motor, coordination and gait." ECF No. 16-1 at 51.

Plaintiff is correct in arguing that the ALJ "may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch*, 400 F.3d at 680. But an ALJ can consider objective medical evidence as "a factor . . . in his credibility analysis." *Id*. And, indeed, this is what the ALJ did here.

Although the ALJ considered the objective medical evidence in making his adverse credibility determination, he also made additional specific findings, including identifying medical opinion evidence (e.g., treatment notes indicating that her MS was well-controlled with

---

[5] Dr. Diaz's treatment notes continue through at least early 2019.

medication) that did not support Plaintiff's pain and symptom testimony. The ALJ's finding that objective medical evidence is inconsistent with Plaintiff's pain and symptom testimony was—in conjunction with his other findings regarding her medical improvement and medical opinion evidence—a specific, clear, and convincing reason, supported by substantial evidence, to discount her pain and symptom testimony. Therefore, the ALJ did not err by relying on objective medical evidence as *a* factor in discounting Plaintiff's pain and symptom testimony. *See Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001) (noting that although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects").

### d. Plaintiff's brain MRI and activities of daily living

Finally, as noted above, the parties dispute whether the ALJ relied on two additional reasons—Plaintiff's brain MRI and activities of daily living—to discount Plaintiff's pain and symptom testimony. Because the Court finds that the ALJ provided at least one specific, clear, and convincing reason to discount Plaintiff's pain and symptom testimony, it does not need to reach the disputed issues. *See Batson,* 359 F.3d at 1197 (holding that where one of an ALJ's several reasons supporting an adverse credibility finding is held invalid, the error is harmless if it "does not negate the validity of the ALJ's ultimate conclusion that [the claimant's testimony] was not credible"); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid).

…

…

…

## III. CONCLUSION AND ORDER

Accordingly, IT IS ORDERED that Plaintiff's motion to remand (ECF No. 20) is DENIED.

IT IS FURTHER ORDERED that Defendant's countermotion to affirm and cross-motion for summary judgment (ECF Nos. 21, 22) is GRANTED.

IT IS ORDERED that the Clerk of Court must enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Linda J. Suica.

DATED: June 25, 2021

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE